IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM BUFORD,

    Petitioner,                    Case No. 2:03-cv-02412 ALA (HC)

    vs.

MATTHEW C. KRAMER,[1]        ORDER

    Respondent.

_____/

    Pending before the Court are William Buford's ("Petitioner") application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a) (doc. 1), Respondent's Answer (doc. 4), and Petitioner's Traverse (doc. 6). Also before the Court are the parties' replies to the Court's April 8, 2008 request for any relevant authority announced after filing of the Answer and Traverse. For the reasons discussed below, Petitioner's application is denied.

**I**

    Petitioner was convicted by a Contra Costa County Superior Court jury of kidnapping for the purpose of robbery, while armed with a deadly weapon, and aggravated assault. He was sentenced to serve a term of seven years to life on the kidnapping for the purpose of robbery

---

[1] Matthew C. Kramer is substituted for his predecessor, D-Butler, as the warden where the prisoner is incarcerated, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

1

1 crimes. The record shows that he and a crime partner conspired to induce a pair of real estate
2 agents to meet them at a residence listed for sale in order to kidnap and rob them. The victims, a
3 married couple drove from Dublin, California to Tracy to meet the feigned prospective buyers,
4 Petitioner and Jerry Sullivan. One of them identified himself as an attorney. After viewing the
5 property for ten minutes, Petitioner and his cohort left the residence. The victims locked up the
6 house and left by the rear door.

7 Petitioner and his crime partner forced the victims at gun point to get into a vehicle.
8 Petitioner and Sullivan demanded $150,000. The victims stated they could not get that much
9 money. The female victim was instructed to go to a bank and withdraw the money to secure
10 their safety and freedom, while her husband remained in the automobile with a gun pointed at his
11 head. The female victim handed a bank teller a note requesting that the police be called. The
12 police responded. The crime partners drove off to escape being captured by pursuing law
13 enforcement officers. After a high-speed chase, the kidnappers' vehicle crashed into a tree. The
14 male victim was rescued unharmed.

## II

16 On January 31, 2002, the BPT found that Petitioner was unsuitable for parole release
17 because "[t]he offense was carried out in a way that demonstrated an exceptionally callous
18 disregard for human suffering." Petitioner filed a petition for a writ of habeas corpus in the
19 Contra Costa County Superior Court. The Contra Costa County Superior Court denied his
20 petition on April 16, 2003. Its order reads as follows:

21 > I. Background.
22 >
23 > Petitioner is currently incarcerated in state prison. Petitioner is before the court in habeas corpus to review the Board of Prison Terms' (hereafter "BPT" or "Board") decision of 1-31-02 denying petitioner parole for one year.
24 >
25 > The underlying commitment was based on two counts of kidnapping for robbery. Petitioner and a cohort enticed a pair of realtors to show them a home. They subsequently kidnaped them
26 > and drove them to a location, demanding $150,000. When the

2

victims convinced them they could not pay that amount petitioner and his partner took the victims to a bank where one of the victims slipped the teller a note to call the police. A high speed chase followed. Petitioner was subsequently apprehended. He was sentenced in 1983 to seven years to life.

Petitioner has exhausted his administrative remedies.

II. Contentions in the Petition.

Petitioner contends 1.) that the Board violated his right to due process when it failed to find him suitable for parole as there was no evidence of unsuitability for parole introduced at the hearing; 2.) that the BPT failed to give substantial credit to the psychologist's report and the counselor's report; and 3.) that the BPT panel "adhere[d]" to the Governor's no parole policy.

III. Discussion.

The Court has carefully reviewed the transcript of the parole hearing and the Board's decision, the attached 1999 Psychiatric Report by Dr. Beermann, Counselor Flatt's Report and the sundry additional exhibits attached to the petition.

The Board explicitly relied on the Report written by Counselor Flatt and prepared for the parole hearing (Tx of 1-31-02 BPT Hearing, p. 17) and the Psychological Report dated April 9, 2001 written by Dr. Beermann and incorporating a 1999 Report (id., at p. 20), also prepared for the hearing. Dr. Beermann's report indicated that petitioner's risk factor (presumably to reoffend) "does not pose more than normal risk factor whether in or out of a controlled environment." (1999 Report, p. 3) Counselor Flatt's Report, however, indicated that Flatt "believes that the prisoner would pose a low degree of threat of society if released from prison at this time." (June 2001 Report, last page.)

The Board, nonetheless, concluded that "the prisoner is not suitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety if he was released from prison. (Decision, p. 53: 8-12.) The Board found Dr. Beermann's report "not an altogether bad report" but not a "glowing report." (Id p. 55.)

The Board's criteria for setting a parole date is set forth in title 15, section 2401 of the California Code of Regulations: "A parole date shall be denied if the prisoner is found unsuitable for parole under section 2402(c)." According to that regulation, circumstances tending to establish unsuitability for paroles are that the prisoner committed the offense in an especially heinous, atrocious, or cruel manner. Factors that support a finding that the prisoner committed the offense in an especially heinous, atrocious, or cruel manner

3

> include that the offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering. (Cal. Code Regs., tit. 15, sec. 2402(c)(1).)
>
> The regulations also provide for those circumstances tending to establish suitability for parole. California Code of Regulations tit. 15, section 2402(d)(8) provides that the prisoner may be paroled if he "has made realistic plans for release or has developed marketable skills that can be put to use upon release."
>
> At the hearing petitioner admitted the crime was cruel and uncalled for. (Hearing, p. 51.) In its Decision the Board found the crime was carried out in a way that demonstrates an exceptionally callous disregard for human suffering. (Decision, p. 53.) The Board found the motive for the crime was inexplicable or very trivial in relationship to the offense. The crime included an armed kidnaping and a high speed chase. Such actions would subject the victims to an exceptionally callous degree of human suffering.
>
> While the Board found petitioner to have made "suitable parole plans" (Decision, p. 55), it did find that there were "some concerns about his employment plans." (Id.) From the court's review of the record, it would appear that petitioner has no marketable skills whatsoever. He had little gainful employment before he entered prison and did not complete any vocational training while in prison. The only training petitioner undertook was in 1990 on outdated equipment. In fact, as the Board noted, petitioner has no letter offering him a job in the file. (Id.) Under these circumstances and without a job the likelihood of recidivism are simply too high to find petitioner a good candidate for parole.
>
> A decision of the Board will be upheld if it is supported by some evidence. (In re Rosenkrantz (2002) 29 Cal.4th 616.) The Board's decision to deny parole was supported by some evidence. The claim of due process violation, therefore, fails.
>
> As to petitioner's final claim about the Governor's no parole policy, that argument has been put to reset in In re Rosenkrantz, supra.
>
> In sum, the Board's decision was proper. Defendant committed the underlying offense when he was 27 years old. The record reflects that he engaged in little meaningful employment prior to committing the offense. If released he has no marketable skills and no job offer. Defendant never completed vocational training courses while incarcerated. He remains a threat, albeit a "low" threat, to society if released. Under the circumstances the risk of reoffending is significant. The conclusion follows that petitioner poses an unreasonable risk of danger to society and a threat to public safety if he is released from prison.

IV. Disposition.

> For the above stated reasons the petition for habeas corpus must be and now is denied.

Petitioner filed a petition for state habeas corpus relief in the California Court of Appeal, First Appellate District, Division Four. The Court of Appeal summarily denied the petition on May 8, 2003. Petitioner filed a petition for review of the decision of the Court of Appeal before the California Supreme Court. It was summarily denied on July 23, 2003.

In determining whether the California courts erred in holding that Petitioner failed to demonstrate that his federal constitutional rights had been violated, this Court must look to the Contra Costa Superior Court's decision as the last reasoned state court opinion addressing Petitioner's contentions. *Franklin v. Johnson*, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002). Petitioner filed a timely application for a writ of habeas corpus in this Court on September 18, 2003.

### III

### A

An application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "shall not be granted with respect to any claim that was adjudicated on the merits" in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### B

Petitioner contends in his application for a writ of habeas corpus pursuant to § 2254(a)

5

that he is entitled to relief on five discrete grounds:

One.  The BPT's denial of a parole release date violates the Fourteenth Amendment of the United States Constitution because "[t]here is no evidence in the record to support the BPT's finding of unsuitability. . . ."

Two.  "The BPT panel failed to give substantial credit to both of the positive psychiatric doctors and the prisoner counselor's reports, in violation of the 14th Due Process Clause of the United States Constitution."

Three.  The BPT adhered to the Governor's "no parole policy" in denying petitioner a parole date, without making an individualized determination, thus violating Petitioner's right to Due Process.

Four.  "Petitioner's sentence is in excess of jurisdiction as a cruel and unusual punishment" in violation of the Eight Amendment to the United States Constitution.

Five.  Did the Superior Court's denial of Petitioner's habeas corpus application or administrative board comport with due process of law"?

**C**

In his answer to Petitioner's application for a writ of habeas corpus, Respondent maintains that a prisoner does not have a federally protected liberty interest in parole under California Penal Code § 3041.  This contention is contrary to the Ninth Circuit's decision in *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127-28 (9th Cir. 2006).  This Court must reject Respondent's contention under compulsion of Ninth Circuit precedent that provides that "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *Id.* at 1127 (citation omitted).

**D**

Respondent also argued in his answer that the some-evidence test announced in *Superintendent v. Hill*, 472 U.S. 445 (1985) is only applicable to prison disciplinary proceedings. Respondent maintains that the "some evidence" standard is not applicable when an inmate is

challenging a parole release decision because it is not based on clearly established federal law as determined by the United States Supreme Court.

In *Hill*, the Supreme Court held that "revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record." (Citation omitted). This Court is bound by the Ninth Circuit's holding in *Sass* that the "some evidence" standard announced in *Hill* applies to parole release proceedings. 461 F.3d at 1128-29.

"To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.'" *Id.* at 1128 (quoting *Hill*, 472 U.S. at 455-56). "*Hill*'s some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.'" *Id.* at 1129 (quoting *Hill*, 472 U.S. at 457).

In *Irons v. Carey*, 505 F.3d 847, 853 (9th Cir. 2007) the Court held that

> where, as here, there is some evidence to support a finding that "the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering" and the "motive for the crime is inexplicable or very trivial in relation to the offense," Cal. Code Regs., tit. 15 § 2402(c)(1)(D)-(E), we cannot say that the state court unreasonably applied *Hill*'s "some evidence" principle.

In *Irons*, the record showed that the BPT relied on the commitment offense in determining that the prisoner was not suitable for release on parole. *Id.* at 852.

The Ninth Circuit limited its holding in *Irons* as follows: "All we held in [*Sass*, 461 F.3d at 1125 and *Biggs v. Terhune*, 334 F.3d 910, 912 (9th Cir. 2002)] and all we hold today, therefore, is that, given the particular circumstances of the offenses of these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms." *Irons*, 505 F.3d at 853-54. In an unusual comment in *Irons*, the panel

7

expressed its aspiration that some future court decision will conclude that the BPT has the duty to grant parole where "there was substantial evidence in the record demonstrating rehabilitation." *Id.* at 854.

The Court stated:

> We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes.

*Id.*

The *Irons* panel did not cite any authority to support its prognostication that the denial by the state court of habeas corpus relief, under such circumstances, would be "contrary to, or involve[] an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" in violation of 28 U.S.C. § 2254(d)(1). No presently binding Ninth Circuit decision has fulfilled the prediction of the *Irons*'s panel.

In the precedential portion of the *Irons* decision, the Court held that "we must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence.'" *Irons*, 505 F.3d at 851. Under California law, a prisoner is unsuitable for parole if:

> (1) the prisoner committed the offense in an especially heinous, atrocious, or cruel manner;
> (2) the prisoner has a previous record of violence;
> (3) the prisoner has an unstable social history;
> (4) the prisoner has committed sadistic sex offenses;
> (5) the prisoner has a history of mental or psychological problems; and
> (6) the prisoner has engaged in serious misconduct while in prison.

Cal. Code Regs., tit. 15 § 2402(c).

In its response to this Court's April 8, 2008, request for supplemental briefing, Respondent again asserted that "[b]ecause the Supreme Court has not applied the some-evidence test to parole decisions a state court decision adjudicating a challenge to the denial of a parole

8

1 release date cannot be overturned based on a some-evidence analysis." As noted above,

2 according to the Ninth Circuit's decision in *Sass*, the "some evidence" rule set forth in *Hill*

3 governs parole denial claims. *Sass*, 461 F.3d at 1128-29. This Court must apply the law of this

4 Circuit. *See Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987) (citation omitted)

5 ("District courts are, of course, bound by the law of their own circuit and 'are not to resolve splits

6 between circuits no matter how egregiously in error they may feel their own circuit to be.'").

7 [Accordingly, this Court must determine whether "some evidence" supported BPT's decisions in

8 2002 and 2003 that Petitioner is not yet suitable for parole because he would "pose an

9 unreasonable risk of danger to society if released from prison." Code Regs., tit. 15 § 2402(c).

## IV

The BPT's January 31, 2002 decision reads as follows:

> **PRESIDING COMMISSIONER WELCH:** Okay. The Panel reviewed all the information received from the public and relied on the following circumstances in concluding that the prisoner is not suitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety if he was released from prison. The offense was carried out in an especially cruel and callous manner. Multiple victims were involved. The offense was carried out in way that demonstrates an exceptionally callous disregard for human suffering. The motive for the crime was inexplicable or very trivial in relationship to the offense. The conclusion was drawn from the Statement of Facts wherein on July 2, 1982 Mr. Riley and his wife drove from their Dublin, California real estate office to Tracy. Mr. and Mrs. Riley had an appointment to meet prospective buyers. The bottom line is two men arrived, later identified as William Buford and Jerry Sullivan. The men came into the house and one of them identified themselves as an attorney. The men spent about 10 minutes looking around the house. When they left, Mr. and Mrs. Riley locked up the house and left by the rear door. Mr. Buford and Sullivan then forced the Rileys at gunpoint to get into the car and they demanded $150,000 to be delivered to the two men. And when the Rileys convinced them that they could not get that much money, Mrs. Riley was instructed to go to the bank and get the money while the husband remained in the car with the other two men. And thank God, Mrs. Riley was smart enough to give the bank teller a note and the two -- The prisoner and his crime partner waited in the car with Mr. Riley, took off during the shooting. During the chase by police they crashed into a tree and subsequently the (inaudible) was rescued unharmed. The prisoner had a very minimal arrest history, a very

9

minimal juvenile history. The only thing that could be considered an escalating pattern of behavior would be the arrest, I believe, for a misdemeanor battery. And he did receive probation for that. So therefore, you failed to profit from society's previous attempts to correct his criminality. And that attempt was adult probation. The psychiatric report dated 1-99 and an update was submitted also on that same psychiatric report by Dr. Beermann. The update was submitted on 4-9-01. It's not an altogether bad report in terms being supported for release. The doctor writes, under assessment of dangerousness, in my opinion Mr. Buford does not pose more than a normal risk factor whether in or out of a controlled environment. But it's not, on the other hand, it's not a negative report. But, on the other hand, it's not a glowing report in terms of suitability for release. Therefore, I'm going to recommend that a new psychiatric report be completed for the next hearing that will be conducted in a year. And the prisoner does appear to have suitable parole plans. However, there are some concerns about his employment plans. There is no letter offering him a job in the file. We found that in response to 3042 Notices that the District Attorney from Contra Costa county voiced an opposition to a finding of suitability. It's also noted that in the file there was some issues raised last time about the prisoner's participation in gang activity in BGF, or the black Guerilla Family. After a lengthy review and the delay of this hearing this morning in order to ascertain his involvement in it, the family is convinced that the prisoner has not been involved in any of this for the last six to seven years, that he's no longer a practicing gang member. And that's validated in the file, that he's not a participant. As to his degree of participation in the past, that's debatable. However, the main thing is that you're not participating now and that you haven't been participating for about six or seven years. And the institution is convinced that you stopped participating in all gang activity, and that's in your file. The prisoner needs therapy in order to understand and cope with stress in a nondestructive manner. Until progress is made the prisoner continues to be unpredictable and a threat to others. Nevertheless, the prisoner should be commended for remaining disciplinary free for the time he's been incarcerated. He's only received one disciplinary. He's no longer associated with gang activity, which he should definitely be commended for that. However, the positive aspects of your behavior do not outweigh the factors of unsuitability. Parole is denied for one year. The Panel recommends that you remain disciplinary free, if available, find some new vocational skills, update them any way that you can. Continue to participate in self-help programs and sooner or later, hopefully sooner, I think if you continue to program in a positive way you're going to have to receive a parole date in the not-too--distant-future. But the day is not today, but we think you're on the right track. Commissioner Weaver?

**DEPUTY COMMISSIONER WEAVER:** I would just echo what was said about updating your vocational skills. There's been a lot

of EPA changes with regard to refrigerants and diesel emissions and what not, and if that's what you plan on getting into to sustain yourself you need to update so that, you know, you are ready to got to work.

**INMATE BUFORD:** Okay.

**DEPUTY COMMISSIONER WEAVER:** I don't have anything else, sir.

**PRESIDING COMMISSIONER WELCH:** This hearing is concluded at 10:50.

**ATTORNEY SKIPPER-DOTTA:** Thank you.

## V

### A

Petitioner first argues that the BPT's denial of a parole release violated the Due Process Clause of the Fourteenth Amendment of the United States Constitution because "[t]here is no evidence in the record to support the BPT's finding of unsuitability... ." This contention completely ignores the evidence of the cruel and callous manner in which Petitioner and his accomplice planned to entice two real estate agents to leave their home or office, ostensibly to show them a residence that was for sale. There Petitioner and his accomplice kidnapped their victims and ordered them at gunpoint to deliver $150,000 to them. While the male victim was held in the Petitioner's vehicle with a gun pointed at this head, the female victim was ordered to obtain the money from a bank. But for her daring decision to alert a bank employee that the police should be summoned, she and her husband might have been murdered, after she returned with the money, to prevent them from testifying against Petitioner and his co-conspirator. The BPT did not err in concluding that the nature of Petitioner's infliction of this cruel and harrowing treatment provided some evidence that Petitioner expressed a callous disregard for human suffering and would pose a risk of danger to society if he were released on parole.

### B

Petitioner also asserts that the BPT panel failed to give substantial credit to the positive reports from a psychiatrist and a prison counselor considering Petitioner's suitability for release

11

on parole. The record shows that the BPT did consider these favorable reports about Petitioner's conduct and performance behind prison walls, but concluded that Petitioner was unsuitable for release from confinement because he "continues to be unpredictable and a threat to others." This Court lacks the power to reweigh the evidence presented to the Board regarding Petitioner's suitability for release on parole. *Sass* 461 F.3d 1128. Accordingly, Petitioner's contention that the BPT failed to give substantial credit to the favorable reports must be rejected.

**C**

Petitioner further asserts that the BPT adhered to the Governor's "no parole policy" without making an individualized determination of his suitability for parole. No evidence has been offered by Petitioner that the BPT in the year 2003 adhered to a "no parole policy" for persons serving life imprisonment because of the Governor's public statements. In support of this contention, Petitioner relies on a report issued by the Legislative Analyst. That report does not support Petitioner's argument. To the contrary, it indicates that in 1999, the BPT granted parole on at least 18 occasions.

The report also states that "the Governor has indicated publicly that he objects to the release of anyone who has committed murder." Petitioner was not convicted of murder. Accordingly, this court must reject Petitioner's claim that he was not released on parole by the BPT because of the Governor's opposition to releasing murderers on parole.

**D**

Petitioner also contends that his "sentence is in excess of jurisdiction as a cruel and unusual punishment "in violation of the Eighth Amendment to the United States Constitution. He has failed to cite any decision of the United States Supreme Court that holds that, an indeterminate sentence, such as one setting the length of imprisonment at seven years to life violates the Eighth Amendment. As noted by the Respondent, the Supreme Court in *Harmelin v. Michigan*, 501 U.S. 957 (1991), concluded that a sentence of life imprisonment without the possibility of parole for the sale of 672 grams of cocaine was not so grossly disproportional as to

violate the Eighth Amendment. *Id*. at 994-995. Here, Petitioner was sentenced to seven years to life under the indeterminate sentence law with the possibility of parole when the BPT determined that he no longer is a danger to society. Under California Indeterminate Sentence Law, the BPT is not required to set a parole date for a person convicted of kidnapping for the purpose of robbery until he or she is found suitable for parole. See *In re Stanworth*, 33 Cal. 3d 176, 183 (1982). The BPT's decision that Petitioner is not yet suitable for release on parole did not violate the Eighth Amendment.

**E**

Finally, Petitioner maintains that the Contra Costa County Superior Court erred in concluding that some evidence supported the BPT's decision to set his parole release date. Thus, contention merely rehearses each of the arguments set forth above. None are meritorious.

**Conclusion**

The BPT decided not to set a release date because it concluded that the evidence of the cruel nature of Petitioner's crimes continues to pose a risk of danger to society if he were set free. This finding outweighs the fact that he has performed well while confined under twenty-four hour control by prison guards. Thus, the BPT's decision was supported by some evidence.

Therefore, it is hereby ORDERED that Petitioner's application for habeas corpus relief is DENIED.

/////

DATED: June 10, 2008

                                               /s/ Arthur L. Alarcón
                                               UNITED STATES CIRCUIT JUDGE
                                               Sitting by Designation